# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Richard D. Talbott,

        Petitioner,

v.

Warden Scott Fisher,

        Respondent.

Civil No. 10-1553 PJS/JJK

**REPORT AND
RECOMMENDATION**

---

Richard D. Talbott, #04895-028, FPI, P.O. Box 1000, Sandstone, MN 55072, *pro se*.

Lisa D. Kirkpatrick, Assistant United States Attorneys, counsel for Respondent.

---

JEFFREY J. KEYES, United States Magistrate Judge.

## INTRODUCTION

This matter is before this Court on the Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. No. 1), the Respondent's Motion to Dismiss Section 2241 Habeas Petition for Lack of Jurisdiction and Stay of Filing a Return Pending Disposition of Motion (Doc. No. 9), Petitioner's Motion to Grant Relief Prayed for in Petition for Writ of Habeas Corpus (Doc. No. 12), and Petitioner's Petition/Motion for Release on [R]ecognizance Bond (Doc. No. 20). This matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For

the reasons discussed below, this Court recommends that: (1) the Petition for Writ of Habeas Corpus (Doc. No. 1), be denied and this action be dismissed with prejudice; and (2) Petitioner's Motion to Grant Relief Prayed for in Petition for Writ of Habeas Corpus (Doc. No. 12), and Petitioner's Petition/Motion for Release on [R]ecognizance Bond (Doc. No. 20), be denied as moot.

## BACKGROUND

This habeas petition is the latest of many lawsuits brought by Petitioner since he was convicted and sentenced in 1996, most of which have involved his claim that he should not have been sentenced as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1)(B). This Court has made yet another review of Petitioner's claim that his prior convictions for violating Indiana's aggravated battery law do not amount to violent felony convictions for the ACCA and that he is thus unlawfully incarcerated in violation of federal law. As in the numerous past reviews conducted by the other federal courts which reviewed the claims, this Court concludes the Petitioner's claim is meritless.

The last suit brought by Petitioner was a habeas petition in 2008 in the Central District of California in which he challenged, as he does here, his sentence of 264 months in prison, imposed by the U.S. District Court for the Southern District of Indiana in 1996 for his conviction of being a felon in

2

possession of ammunition.  In that habeas petition Petitioner claimed, *inter alia*, that he should not have been sentenced as an armed career criminal because he did not have three prior "violent felony" convictions on his record, as the term "violent felony" is used in the ACCA.  Petitioner based that assertion on a 2008 decision of the U.S. Supreme Court in *Begay v. United States*, 553 U.S. 137 (2008), interpreting what crimes qualify as violent felonies under the ACCA.  The Central District of California dismissed the habeas petition for lack of subject matter jurisdiction because only the sentencing court, in this case the U.S. District Court for the Southern District of Indiana, has jurisdiction to hear a federal prisoner's claim attacking the validity of a conviction or sentence pursuant to 28 U.S.C. § 2255.  *Talbott v. Holencik*, No. 08-0619, 2009 WL 322107 (C.D. Cal. Feb. 5, 2009).  A prisoner may not collaterally attack a federal conviction or sentence by way of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Having now been moved to the custody of a federal prison in Minnesota, Petitioner seeks a replay in this District of the action he unsuccessfully brought in the Central District of California.  The only thing that has changed since the dismissal of Petitioner's last habeas petition in 2009 is that the Supreme Court of the United States decided another case interpreting the requirements the government must meet in establishing a prior violent felony conviction before the

Armed Career Criminal Act applies to a federal sentence, *Johnson v. U.S.*, ---
U.S.---, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010).  This, however, does not change

the fact that only the sentencing court has jurisdiction to hear Petitioner's

collateral attack and this habeas petition, like the one Petitioner brought in the

Central District of California in 2008, should be dismissed for lack of jurisdiction.

## PROCEDURAL HISTORY

In 1995, a jury in the United States District Court for the Southern District

of Indiana found Petitioner guilty of being a felon in possession of a firearm and

of being a felon in possession of ammunition.  The government requested that

Petitioner be sentenced as an "armed career criminal" within the meaning of Title

18, United States Code, § 924(e) and U.S.S.G. § 481.4 because Petitioner had

three previous convictions for a "violent felony" as defined in 18 U.S.C. §

924(e)(2)(B).  Each of these convictions was a "class C felony (Battery)"

conviction under the criminal law of the state of Indiana.  (Doc. No. 10, Resp't.

Mem. in Supp. of Mot. to Dismiss ("Resp't. Mem."), Ex. 7 at 37-39 of 69.)  "Class

C felony (Battery)", often referred to as an aggravated battery, is defined in the

Indiana criminal law as follows:

> A person who knowingly or intentionally touches
> another person in a rude, insolent, or angry manner
> commits battery, a Class B misdemeanor.  However,
> the offense is . . . (3) a Class C felony if it results in
> serious bodily injury to any other person or if it is
> committed by means of a deadly weapon.

4

Ind. Code Ann. § 35-42-2-1(3).

The violent nature of this type of aggravated battery is illustrated by the description of the brutal conduct Petitioner was accused of and which formed the basis of the class C felony battery charge in 1991 which led to the third of Petitioner's prior convictions:

> TALBOT returned and upon receiving his laundry, grabbed MS. TAYLOR, started choking her and pushed her into the bedroom. TALBOT also struck MS. TAYLOR with his fist causing extreme pain and swelling to her eye. TALBOT then grabbed MS. TAYLOR by the throat and took off her pants and underwear. TALBOT then had sexual intercourse with MS. TAYLOR while choking and verbally abusing her.

*Talbott v. Revell*, 3:05-cv-00288 (S.D. Ill. 2005) (Doc. No. 1, Ex. 3 (Probable Cause Aff. for Arrest Warrant in *State of Indiana v. Richard Dale Talbot*, 10L01-9103-CF-046, Clark County, Indiana.))

Under the ACCA a "violent felony" is defined as "any crime punishable by imprisonment for a term exceeding one year" that:

> (i)      has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)     is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 924(e)(2)(B).

Finding that Petitioner qualified as an armed career criminal, the district

court sentenced Petitioner to 327 months in prison. On appeal, the Seventh Circuit Court of Appeals affirmed Petitioner's conviction for possession of ammunition but reversed the conviction for possession of a firearm and granted petitioner a new trial on the firearm charge. With respect to the sentencing on the ammunition count, the Seventh Circuit said that "Talbott has a long criminal record, and the government asked the judge to sentence him as an armed career criminal under 18 U.S.C. § 924(e). He satisfies the statutory requirements." *U.S. v. Talbott*, 78 F.3d 1183, 1189 (7th Cir. 1996). However, the Seventh Circuit concluded that the offense level for the crime for which Petitioner was convicted should have been a level 33, not level 34, and thus the sentence imposed by the district court was vacated and the case was remanded for resentencing. *Id*.

On remand, the prosecution dismissed the firearm possession charge and on July 3, 1996 the district court resentenced Petitioner to 264 months in prison on the possession of ammunition conviction. Petitioner then appealed this conviction for a second time, arguing, *inter alia*, that he should not have been sentenced as an armed career criminal because he did not have three distinct convictions for violent crimes. The Seventh Circuit, however, rejected this argument because "[t]hat argument was raised, and rejected, on the first appeal. . . . Talbott does not argue that the law changed in the interim, so the law of the case leads us to reject it again." *U.S. v. Talbott*, 107 F.3d 874 (7th Cir. 1997).

6

The court also explained that Petitioner's sentence resulted from his possession of ammunition conviction coupled with three prior convictions for crimes of violence, severe recidivist enhancements for violent criminals were constitutional, and that the district court was entitled to rely on Petitioner's criminal history and the fact that his crime was related to a violent altercation involving a firearm, even though that charge was dismissed. *Id.*

Petitioner then filed a motion pursuant to 18 U.S.C. § 2255 in the United States District Court for the Southern District of Indiana, attacking his sentence. He included the claim that he should not have been sentenced as an armed career criminal, but the district court rejected that claim: "[t]his argument was raised and rejected in Talbott I, 78 F.3d at 1189-90, and there is no reason why the claim can or should be revisited now, just as the same effort was rebuffed in Talbott II." (Doc. No. 10, Resp't. Mem., Ex. 7, at 49 of 69 (*U.S. v. Richard Dale Talbott*, NA, 94-21-CR-H/H)). The Seventh Circuit declined to issue a Certificate of Appealability. (*Id.*, Ex. 7 at 60 of 69.)

Since his first failed § 2255 motion, Petitioner has filed a series of habeas petitions and successive § 2255 motions. For example, in 2000 Petitioner returned to district court and filed a federal habeas corpus petition under § 2241. He argued that the district court in his criminal case lacked jurisdiction to convict and sentence him and that he was actually innocent of being an armed career

criminal.   But the district court concluded that Petitioner's claim fell "squarely

within the scope of [28 U.S.C. §] 2255," and thus constituted a second or

successive § 2255 motion that should be dismissed for lack of jurisdiction

because Petitioner had failed to obtain permission from the Seventh Circuit Court

of Appeals to present his claim in a second § 2255 motion.  *Talbott v. Lappin*, No.

TH00-0184-C-T/F2000, WL 1124950, at *2 (S.D. Ind. Jul. 21, 2000); s*ee* 28

U.S.C. § 2244(b)(3)(A).  ("Before a second or successive application permitted

by this section is filed in the district court, the applicant shall move in the

appropriate court of appeals for an order authorizing the district court to consider

the application.")  The Seventh Circuit summarily affirmed the district court

judgment, concluding that Petitioner could not use a § 2241 habeas petition to

circumvent the pre-approval procedures of §§ 2244(b) and 2255(h), and thus the

habeas petition was properly dismissed by the district court for lack of

jurisdiction.  (Doc. No. 10, Resp't. Mem., Ex. 7, at 60-61 of 69.)

Later in 2000, Petitioner brought a series of applications to the Seventh

Circuit seeking an order pursuant to 28 U.S.C. § 2244(b)(3) authorizing the

district court to consider a second or successive motion under 28 U.S.C. § 2255.

In denying the third of these applications, the Seventh Circuit noted that

"[Petitioner] proposes presenting a successive collateral attack on the ground

that he is actually innocent of being an armed career criminal under 18 U.S.C. §

924(e)." (*Id.*)  However, this claim, said the Seventh Circuit, relies on neither a new constitutional rule nor newly discovered evidence and, thus, Petitioner did not satisfy the statutory criteria for authorization in bringing a second or successive § 2255 motion.  (*Id.*)

Undeterred, Petitioner kept filing applications for leave to file motions attacking his sentence under the armed career criminal provision, trying both the § 2255 and § 2241 habeas gambits.  In 2001 the Seventh Circuit sanctioned Petitioner for filing frivolous applications and restricted his further filings in that court, but the restriction was to no avail as Petitioner continued filing claims. (Doc. No. 10, Resp't. Mem., Ex. 4 at 2 of 2.)  Finally, in 2003, after noting that Petitioner had presented the exact same claim—that he was actually innocent of being an armed career criminal—in at least nine separate lawsuits, the Seventh Circuit sanctioned him by expanding the filing bar "to cover all collateral attacks on his current conviction, including those filed in the district courts." (*Id.*, Ex. 5 at 4 of 4.)

In 2006, Petitioner filed a motion for resentencing under 18 U.S.C. § 3582(c)(2) in United States District for the Southern District of Indiana.  *See* U.S. v. *Talbott*, 2007 WL 141925 at *1 (S.D. Ind. Jan. 4, 2007)   He argued, *inter alia*, that there was insufficient evidence to establish that he was an armed career criminal under 18 U.S.C. § 924(e).  The district court, however, found that the

record showed that Petitioner's criminal history was sufficient for sentencing as an armed career criminal and that the issue had been decided by the Seventh Circuit Court of Appeals in Petitioner's first two appeals.  *Id.* at 2.

In 2008, the United States Supreme Court considered whether driving under the influence of alcohol, a felony under New Mexico's criminal statutes, qualified as a "violent felony" conviction for sentencing under the Armed Career Criminal Act.  *Begay,* 553 U.S. at 138.  The Court held that a crime qualifies as a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii), which defines a violent felony to include an offense that "is burglary, arson, or extortion, or otherwise involves conduct that presents a serious potential risk of physical injury to another," if it presents a serious potential risk of physical injury to another and is roughly similar in kind, and degree of risk posed, to the four crimes listed in the statute.  *Id.* at 140-45.  The Court reasoned that driving under the influence of alcohol, a strict liability crime, differs from the type of violent and aggressive crimes, such as arson, burglary, extortion, or crimes involving the use of explosives, listed as examples in the statute, because the latter crimes are associated with the likelihood of future violent, aggressive, and purposeful "armed career criminal" behavior in a way that driving under the influence of alcohol is not.  *Id.* at 148.  As such, the Court concluded that driving under the influence of alcohol, as defined under New Mexico's criminal statutes, fell outside the scope of the

"violent felony" definition of the armed career criminal statute. *Id.*

Armed with the *Begay* decision, Petitioner filed a habeas petition in 2008 in the Central District of California, where he was then imprisoned, claiming that, in light of *Begay*, he did not have a "violent felony" conviction under 18 U.S.C. § 924(e)(2)(B). Petitioner's three prior battery convictions did not, he argued, involve conduct that presented a serious potential risk of physical injury to another of a kind and degree of risk involved in the crimes listed in the armed career criminal statute and referenced by the Supreme Court in *Begay*. They were, said Petitioner, akin to the D.U.I. convictions in New Mexico which the Supreme Court concluded did not qualify as ACCA violent felony convictions. As noted above, the Central District of California dismissed the petition because it concluded that the court lacked jurisdiction to consider the habeas petition. A motion under 28 U.S.C. § 2255 is "the exclusive means by which a federal prisoner may test the legality of his detention, and that restriction on the availability of a § 2255 motion cannot be avoided through a petition under 28 U.S.C. § 2241." *Talbott*, 2009 WL 322107, at *4. (quoting *Stephens v. Herrera,* 464 F.3d 895, 897 (9th Cir. 2006)). The court held that Petitioner had failed to bring a motion in the Seventh Circuit to allow a second or successive § 2255 motion to be brought in the sentencing court in the Southern District of Indiana. *Id.* at *6. The court also concluded that Petitioner could not establish that the

11

remedy available to him under § 2255 is "inadequate or ineffective to test the validity of his detention" and that he was not entitled to use the "savings clause" in § 2255(e) to bring habeas petition in the Central District of California, the locus of incarceration. *Id.* at *7.

In 2010, the U.S. Supreme Court rendered another decision interpreting the term "violent felony" in the ACCA. *Johnson,* 130 S.Ct. at 1269. But this time the Court dealt specifically with prior battery convictions. *Id.* at 1269-70. There, the Court concluded that a conviction for a simple battery under Florida law did not amount to a violent felony under the ACCA. *Id.* at 1271, 1274. The Court explained that under Florida's battery statute, a violation can be established by any intentional physical contact, no matter how slight, whereas under the ACCA, an offense must be a crime that has "as an element the use, attempted use, or threatened use of physical force against a person of another . . . ." *Id.* at 1271. Relying on its ordinary definition and statutory context, the Court concluded that the phrase "physical force" in the ACCA, "means violent force—that is force capable of causing physical pain or injury to another person." *Id.* at 1271. Thus, the Court held that the prior battery conviction under Florida law was not a violent felony under the ACCA because it did not have as an element the use of physical force against another person. *Id.* at 1271, 1274. The Court also made clear that it was dealing only with a simple battery crime, not the crime of aggravated

battery such as the class C felony battery crimes of which Petitioner was convicted.  *Id.* at 1273-74.

Johnson spurred Petitioner to try again, this time in this district where he is now incarcerated at the federal prison in Sandstone, Minnesota.  Boiled down to its essence, his claim here is that the Supreme Court's 2010 decision in *Johnson* shows that he has been right all along in his 15-year quest to get a court to agree that he should not have been sentenced as an armed career criminal.  He contends that the Indiana battery statute, like Florida's battery statute in *Johnson*, does not satisfy the requirement of a "violent force" conviction needed for classification as a felony under the ACCA.  (Doc. No. 2, Talbott's Br. in Supp. of Habeas Pet. ("Talbott's Br.") at 19.)  He asserts that he is "actually innocent" of being an armed career criminal and his sentence violates due process.  *Id.*  He thus seeks, as habeas relief, immediate release from prison.

## DISCUSSION

Based on the Supreme Court's recent ruling in *Johnson*, Petitioner challenges the sentence in this § 2241 habeas petition as unconstitutionally imposed by the United States District Court for the Southern District of Indiana. Petitioner acknowledges that a challenge to the legality of a conviction is ordinarily brought under 28 U.S.C. § 2255.  (Doc. No. 2, Talbott's Br. at 1.) Indeed, generally, a federal prisoner can collaterally attack his conviction or

13

sentence only by filing a motion in the trial court pursuant to 28 U.S.C. § 2255.

*Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004). "[P]ractical concerns led Congress, in 1948, to enact 28 U.S.C. § 2255, and to make it the main provision governing collateral attacks on convictions by federal prisoners." *Henderson v. INS*, 157 F.3d 106, 124 (2d Cir. 1998); *see also U.S. v. Hayman*, 342 U.S. 205, 212-19 (1952) (explaining § 2255 legislative history). Section 2255 "channels collateral attacks by federal prisoners to the sentencing court (rather than to the courting the district of confinement [as § 2241 requires]) so that they can be addressed more efficiently." *Triestman v. U.S.*, 124 F.3d 361, 373 (2d Cir. 1997).

As is the case with habeas petitions, important considerations about finality and avoiding the strain of  repetitive litigation on limited judicial resources constrain continuous filing of § 2255 motions.  Once having brought a § 2255 claim, as Petitioner did here in 2000, a prisoner may not bring a second or successive § 2255 motion in district court unless "a panel of the appropriate court of appeals" certifies that the motion contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made *retroactive* to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255 (emphasis added).

14

Habeas corpus petitions are not completely foreclosed by § 2255 relief. Although § 2255 affords federal prisoners a "remedy exactly commensurate with that which had previously been available by habeas corpus", *Hill v. U.S.,* 368 U.S. 424, 427 (1962), § 2255 recognizes that federal prisoners may resort to the traditional remedy of federal habeas corpus, pursuant to 28 U.S.C. § 2241, in the limited circumstances in which it "appears that the remedy by motion [pursuant to § 2255] is inadequate or ineffective to test the legality of [the] detention," the so-called "savings clause" of § 2255. *Hill v. Morrison*, 349 F.3d 1089, 1091 (8th Cir. 2003).

A petitioner has the burden of demonstrating that § 2255 relief in sentencing court would be inadequate or ineffective. *Hill*, 349 F.3d at 1091. And "[a] district court does not have subject matter jurisdiction over issues concerning the imposition of a sentence by another district court 'unless it . . . appears that the remedy by motion [to the sentencing court] is inadequate or ineffective to test the legality of [an inmate's] . . . detention.'" *Desimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 1986) (per curiam) (quoting 28 U.S.C. § 2255). Since Petitioner did not apply for certification from the Seventh Circuit to bring a successive § 2255 petition, this habeas petition should be dismissed for lack of subject matter jurisdiction unless Petitioner sustains the burden of demonstrating that § 2255 relief would be unavailable or ineffective. *Hill,* 349 F.3d at 1091.

With this background in mind, we turn to Petitioner's claim that the savings clause of § 2255 applies in his case. He argues that *Begay* and *Johnson*—the relevant case law underlying his claim that he did not have three "violent felony" convictions under the ACCA—did not emerge until after he had already filed his § 2255 motion in the District Court for the Southern District of Indiana some 14 years ago. Section 2255 relief is inadequate or ineffective, he argues, because he cannot meet the conditions for bringing a successive petition under § 2255. That is, he acknowledges that (1) newly discovered evidence is not in issue, and (2) the Supreme Court decisions in *Begay* and *Johnson* are not "new rules" of constitutional law that are retroactively applied; rather, those decisions merely interpreted a statute using rules of statutory construction. (Doc. No. 2, Talbott's Br. 11-12.)

However, these restrictions on successive § 2255 motions do not in and of themselves render § 2255 inadequate or ineffective within the meaning of the savings clause. S*ee, e.g., Abdallah,* 392 F.3d at 959; United *States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir. 2000) ("§ 2255 motion is not inadequate or ineffective merely because § 2255 relief has already been denied, or because [a prisoner] has been denied permission to file a second or successive § 2255 motion.") (internal citations omitted). Indeed, if that were so, it would swallow up the statute's restrictions. *Cf. Sustache-Rivera v. U.S.,* 221 F.3d 8, 12 (1st Cir. 2000)

("Recognizing the danger that the exception could easily swallow the rule and frustrate Congress' purpose in enact in AEDPA, the courts of appeals have read th[e savings clause] exception narrowly.")  The Eighth Circuit has rejected the notion that the savings clause is triggered under circumstances where the only "inadequate or ineffective" claim is based on a petitioner's inability to be granted permission to file a successive § 2255 petition.  *See, e.g.*, *Hill*, 349 F.3d at 1091. If a federal prisoner who cannot bring a successive § 2255 because of that law's substantive or procedural gatekeeping limitations could, without more, simply bring a writ of habeas corpus to try to get the same relief, then "Congress would have accomplished nothing at all in its attempts—through statutes like the AEDPA—to place limits on federal collateral review."  *Triestman,* 124 F.3d at 376.

The restricted nature of the type of matter which would trigger the savings clause exception is shown by the interplay between § 2255 and traditional habeas actions.  Since 1789, Congress has empowered the federal courts to issue a writ of habeas corpus if a prisoner is "in custody, under or by colour of the authority of the United States."  The Judiciary Act of 1789, Ch. 20, § 14, 1 Stat. 81-82.  And today federal courts continue to retain jurisdiction to entertain habeas corpus petitions from federal prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

When § 2255 was enacted in 1948 it did not supplant the traditional habeas remedy; rather, it channeled collateral attacks by federal prisoners to the sentencing court so that they could be addressed more efficiently. *Hayman*, 342 U.S. 205 at 210-19. For example, federal prisoners are often incarcerated in prisons which are long distances from their district of conviction and it is difficult to secure witnesses and the production of evidence at a habeas hearing in the district of the prisoner's custody where a habeas petition must be brought. *Id.* But, as far as substance is concerned, § 2255 affords federal prisoners a "remedy exactly commensurate with that which had previously been available by habeas corpus." *Hill,* 368 U.S. at 427.

Why then is there a savings clause preserving the habeas route when § 2255 is "unavailable or inadequate"? This is explained by the fact that "outright abolition of habeas corpus for federal prisoners might conceivably have been held to violate the Constitution" because Article I, § 9, cl. 2 forbids the suspension of the writ of habeas corpus except in a situation of rebellion or invasion:

> Because the Constitution forbids the suspension of the writ of habeas corpus except in a situation of rebellion or invasion, U.S. Const. art. I § 9, cl. 2, outright abolition of habeas corpus for federal prisoners might conceivably have been held to violate the Constitution. Whether for this or other reasons (the legislative history is uninformative), Congress created a safety hatch: if section 2255 proved in a particular case not to be an

18

> adequate substitute for habeas corpus, the prisoner
> could seek habeas corpus.  This would block any
> argument that Congress was suspending the writ.

*In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998).  Given the overlap between §

2255 and traditional habeas, however, there will be very few cases where this

constitutional safety valve will need to be opened.  It is limited to the set of cases

in which the petitioner cannot, for whatever reason, utilize § 2255, and in which

the failure to allow for collateral review "would raise serious constitutional

questions."  *Triestman*, 124 F.3d at 378.  The circuits that have examined this

question have narrowed this even further, framing it in terms of the type of

extraordinary cases where the petitioner asserted a viable claim of actual

innocence and did not have an earlier opportunity to raise the claim.  *See*

*Abdullah,* 392 F.3d at 962-963 (discussing guidance on this issue provided by

the Fourth, Fifth, and Eleventh Circuits in *In re Jones*, 226 F.3d 328 (4th Cir.

2000); *Reyes-Requena v. U.S.*,  243 F.3d 893 (5th Cir. 2001), and *Wofford v.*

*Scott*, 177 F.3d 1236 (11th Cir. 1999)).  This might arise, for example, where

after the federal prisoner is convicted and after his § 2255 motion is adjudicated,

the Supreme Court interprets the scope of the federal statute under which he

was convicted to not reach the conduct for which he was convicted.  The prisoner

could not then bring a successive 2255 motion because the Supreme Court's

statutory interpretation does not constitute a new rule of constitutional law but the

prisoner is incarcerated in that event for "an act that the law does not make criminal." *Bousley v. U.S.*, 523 U.S. 614, 620 (1998) (quoting *Davis v. U.S.,* 417 U.S. 333, 346 (1974).

> To capture the idea that the incarceration of one whose conduct is not criminal 'inherently results in a complete miscarriage of justice,' *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), most circuits have included an actual innocence component in their savings clause tests. *See, e.g., Jones*, 226 F.3d at 334 ("the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal"); *Wofford*, 177 F.3d at 1244 ("the holding of [the] Supreme Court establishes the petitioner was convicted for a nonexistent offense"); *Davenport*, 147 F.3d at 611 ("so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense"), *Dorsainvil*, 119 F.3d at 251 ("prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate"). The actual innocence element has also been foreshadowed in our own savings clause jurisprudence. *See, e.g., Kinder*, 222 F.3d at 213 (noting with approval that "[w]here the petitioner's case has been viewed [in other circuits] as falling within the savings clause, it was in part because the petitioner arguably was convicted for a nonexistent offense").

*Reyes-Requena v. U.S.*, 243 F.3d 893, 904 (5th Cir. 2001).

Petitioner attempts to fit into the actual innocence criteria by claiming that the Supreme Court's 2010 *Johnson* decision establishes that he is actually innocent of being an armed career criminal. In its statutory construction of the ACCA, he argues, the Supreme Court held that a crime of battery by actually and

intentionally touching another person does not have "as an element the use . . . of physical force against the person of another," § 924(e)(2)(B)(i) and does not constitute a "violent felony" under § 924(e)(2)(B)(ii), and thus his prior battery convictions did not amount to armed career criminal conduct for purposes of the ACCA.  But the aggravated battery statute under which Petitioner was convicted plainly includes the requisite elements of "violent felony" under § 924(e)(2)(B).  It is not a simple battery misdemeanor statute pursuant to which the accused can be convicted for engaging in conduct without the requisite use of physical force:

> A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor.  However, the offense is . . . (3) a Class C felony if it results in *serious bodily injury to any other person or if it is committed by means of a deadly weapon*.

Ind. Code Ann. § 35-42-2-1(3) (emphasis added).  This fits squarely within the sort of violent felony crime punishable by imprisonment for a term exceeding one year described in § 924(e)(2)(B).  It "has as an element the use, attempted use, or threatened use of physical force against the person of another," § 924(e)(2)(B)(i), because it is a battery which "results in serious bodily injury to any other person," or it is a battery that "otherwise involved conduct that presents a serious potential risk of physical injury to another," § 924(e)(2)(B)(ii), if it is "committed by means of deadly weapon." (*Id.*)  If anything, the Supreme Court's 2010 *Johnson* decision makes clear that every court that has examined

Petitioner's claim that he is innocent of being an armed career criminal—the Seventh Circuit, the Southern District of Indiana, and the Central District of California—has properly rejected his claim.

Moreover, there is nothing about *Johnson* that suggests that Petitioner did not have "the procedural opportunity" to raise his claim of actual innocence—that is, innocent of being an armed career criminal—in the earlier direct appeal and post-conviction proceedings. *Abdallah,* 392 F.3d at 963-965. Indeed, that is precisely what he did raise in those cases. The *Johnson* decision did not constitute the sort of groundbreaking change in the interpretation of a federal statute that raises the specter of an actually innocent person languishing in prison for commission of conduct that did not qualify for incarceration and without an opportunity to have his claim reviewed. Petitioner does not qualify for § 2255 savings clause application, and his Petition should be dismissed for lack of subject matter jurisdiction. Petitioner's other motions—for relief prayed for in petition for writ of habeas corpus, and for release on recognizance bond pending the disposition of his habeas Petition—should be denied as moot.

## RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.     Respondent's Motion to Dismiss Section 2241 Habeas Petition for

Lack of Jurisdiction and Stay of Filing a Return Pending Disposition of Motion

(Doc. No. 9), be **GRANTED**;

2.      Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C.

§ 2241 and Writ of Mandamus Pursuant to 28 U.S.C. § 1361 (Doc. No. 1), be

**DISMISSED**.

3.      Petitioner's Motion to Grant Relief Prayed for in Petition for Writ of

Habeas Corpus (Doc. No. 12), be **DENIED AS MOOT**; and

4.      Petitioner's Petition/Motion for Release on [R]ecognizance Bond

(Doc. No. 20), be **DENIED AS MOOT**.


Date:  October 21, 2010              *s/ Jeffrey J. Keyes*
                                      JEFFREY J. KEYES
                                      United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**November 4, 2010**, a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within **fourteen days** after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.